PRESENT: Hassell, C.J., Lacy, Keenan, Koontz, Kinser and Lemons, JJ., and Stephenson, S.J.

DAVID ALAN STEVENS

                                        OPINION BY
v.  Record No. 051890   SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                    September 15, 2006
COMMONWEALTH OF VIRGINIA

             FROM THE COURT OF APPEALS OF VIRGINIA

                                I

     Upon a jury verdict in the Circuit Court of Loudoun County,

David Alan Stevens was convicted of aggravated involuntary

manslaughter, in violation of Code § 18.2-36.1.  Stevens was

sentenced to 15 years in prison, and his conviction was affirmed

by a panel of the Court of Appeals.  Stevens v. Commonwealth, 44

Va.App. 122, 603 S.E.2d 642 (2004).  Thereafter, the Court of

Appeals, sitting en banc, also affirmed the conviction.  Stevens

v. Commonwealth, 46 Va.App. 234, 616 S.E.2d 754 (2005).  We

awarded Stevens this appeal.

                                II

     Stevens contends that the trial court committed reversible

error in allowing into evidence the results of a blood alcohol

content test performed on a blood sample taken from him in

violation of his Fourth, Fifth, and Fourteenth Amendment rights.

Stevens also contends that the trial court erred in denying his

motion to dismiss the charge of aggravated involuntary

manslaughter because he had not been provided the opportunity

for an independent testing of the blood taken from him pursuant to the implied consent law, Code § 18.2-268.2.  Finally, Stevens claims that the evidence is insufficient, as a matter of law, to support his conviction.

III

On appeal, we must view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).

Approximately 2:00 a.m., on June 29, 2002, Stevens was driving his motor vehicle north on Sterling Boulevard, a four-lane divided highway in Loudoun County.  Barry Childers was driving his vehicle south on the same highway, and Heather Watson was a passenger in his car.

As Childers approached the intersection of Sterling Boulevard and East Frederick Drive, he entered the left-turn lane with the intention of turning left onto East Frederick Drive.  Childers paused in the left-turn lane until the controlling traffic light changed from red to a green arrow and then proceeded to turn left.  When he was "halfway through the intersection," the car operated by Stevens struck the passenger

2

side of Childers' car.[1]  Heather Watson died as a result of injuries she sustained in the collision.  There were no skid marks at the scene.

Shortly after the collision, Childers approached Stevens' car to check on the driver.  According to Childers, Stevens "was talking[,] but [Childers] couldn't understand what [Stevens] was saying."  Stevens "was just mumbling."

The first police officer to arrive at the accident scene detected a strong odor of alcohol about Stevens' car.  A rescue worker at the scene detected a very strong odor of alcohol on Stevens' breath, and she described Stevens as very disoriented.  Stevens told the rescue worker that he had consumed both beer and "shots of alcohol."  When asked how much he had consumed, Stevens said, "Lots, and lots, and lots."  Stevens also told the rescue worker that he did not remember the accident, and he asked her, "What did I hit?"

Stevens was taken to a nearby hospital for examination.  At the hospital, Stevens reported that he had consumed 12 to 24 beers prior to the accident.  Hospital personnel took a sample of Stevens' blood for testing, and the test performed on the

---

[1] John Olivo of the Virginia Department of Transportation explained the operation of the traffic lights at the accident scene and stated that the traffic light controlling the northbound lanes of Sterling Boulevard will always be red when the southbound left-turn lane of Sterling Boulevard shows a green arrow.

sample indicated a blood alcohol content of .24 or .25 (the Hospital Test).

A deputy sheriff approached Stevens at the hospital and clearly smelled the odor of alcohol in the room where Stevens was located. The deputy arrested Stevens for driving under the influence of alcohol and advised Stevens about the implied consent law. Stevens agreed to a blood test (the Implied Consent Law Test). After two vials of blood had been drawn from Stevens, the deputy explained to Stevens that he was entitled to have one vial independently analyzed. The deputy further explained that, if Stevens desired an independent analysis, he needed to sign a certain form. Stevens responded, "I'm too f_____ up. I can't sign s____." The Implied Consent Law Test indicated a blood alcohol content of .21.

At trial, Dr. Carol O'Neal of the Department of Forensic Sciences testified as an expert witness for the Commonwealth. Dr. O'Neal stated that a blood alcohol content reading above .20 would cause a motor vehicle operator to have tunnel vision, increased reaction time, decreased steering accuracy, and a tendency to be inattentive. Such an operator would have trouble adapting vision between light and dark and reduced ability to adjust vision from far to near and vice-versa. The operator also would have a loss of coordination and reduced ability to

4

estimate a vehicle's speed and to observe traffic signals, traffic signs, other vehicles, and pedestrians.

## IV

### A

Prior to trial, Stevens contended that the seizure of his blood by the police had violated his rights contained in the Fourth, Fifth, and Fourteenth Amendments to the Federal Constitution. He asserted that there had been no probable cause to support his arrest; that he had not, in fact, been arrested; and that exigent circumstances had not supported the taking of his blood sample without a warrant.

Following a pretrial hearing, the trial court suppressed the certificate of analysis regarding the Implied Consent Law Test and precluded the Commonwealth from using the presumptions established by Code § 18.2-269. At trial, however, Dr. O'Neal was allowed to report that the Implied Consent Law Test revealed a blood alcohol content of .21. Stevens contends that, in doing so, the trial court committed reversible error. We do not agree.

In Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999), we quoted from Chapman v. California, 386 U.S. 18, 24 (1967), as follows: " '[B]efore a federal constitutional error can be held harmless, the court must be able to declare a

belief that it was harmless beyond a reasonable doubt.' "  We further stated the following:

> In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case.

Lilly, 258 Va. at 551, 523 S.E.2d at 209.

The Hospital Test had been independently performed by hospital personnel and the written report thereof was admissible under Code § 19.2-187.02(A).[2]  It is unreasonable to believe that the jury would have rejected the Hospital Test and accepted, instead, the Implied Consent Law Test.  Moreover, Stevens' conduct and statements showed that he was highly intoxicated at the time of the collision.  Therefore, we conclude that any error in permitting Dr. O'Neal to testify as to the result of the Implied Consent Law Test was harmless beyond a reasonable doubt, and we so hold.

---

[2] At the time of the offense, Code § 19.2-187.02(A) provided, in pertinent part, the following:

> Notwithstanding any other provision of law, the written results of blood alcohol tests conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business records exception to the hearsay rule in prosecutions for any violation of § 18.2-266 (driving while intoxicated) or a substantially similar local ordinance [and] § 18.2—36.1 (involuntary manslaughter resulting from driving while intoxicated).

Stevens also contends that the trial court erred in refusing to dismiss the charge of aggravated involuntary manslaughter because he had not been provided the opportunity for an independent testing of the blood taken from him pursuant to the implied consent law. See former Code § 18.2-268.6 (1996 & Supp. 2002).

Again, we conclude that any error was harmless beyond a reasonable doubt, and we so hold.[3] As previously noted, the Hospital Test revealed a higher blood alcohol content than the result reported from the Implied Consent Law Test. The Hospital Test was an independent examination performed by hospital personnel who had no interest in the charge against Stevens. Both of the tests performed on Stevens' blood showed an alcohol content in excess of .20, and it is unreasonable to believe that a third test would have differed substantially.

V

Finally, we consider Stevens' contention that the evidence is insufficient, as a matter of law, to support his conviction. Code § 18.2-36.1 provides, in pertinent part, the following:

---

[3] In its brief, the Commonwealth presents argument to counter what it characterizes as Stevens' federal constitutional claim. It is unclear from Stevens' brief whether he makes such a claim, but, to the extent that he does, we have held the Commonwealth to this more stringent harmless-error standard.

A. Any person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 or any local ordinance substantially similar thereto unintentionally causes the death of another person, shall be guilty of involuntary manslaughter.

B. If, in addition, the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life, he shall be guilty of aggravated involuntary manslaughter.

When a person challenges the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth and give the Commonwealth all reasonable inferences fairly deducible therefrom. Dowden v. Commonwealth, 260 Va. 459, 461, 536 S.E.2d 437, 438 (2000). Further, a jury's verdict should not be disturbed on appeal unless the verdict was plainly wrong or without evidence to support it. Stockton v. Commonwealth, 227 Va. 124, 145-46, 314 S.E.2d 371, 385 (1984).

Stevens first asserts that the evidence was insufficient, as a matter of law, to prove that he was intoxicated at the time of the accident. We disagree.

There is ample evidence that Stevens was extremely intoxicated. The Hospital Test showed that Stevens' blood alcohol content was .24 or .25, approximately three times the legal limit. As previously related, an expert testified about the effect that this amount of alcohol would have on an operator of a motor vehicle. There was also evidence that Stevens did not remember what he had hit. Stevens admitted he had consumed

8

between 12 and 24 beers before the accident, and witnesses who observed Stevens after the accident testified that Stevens was mumbling, confused, and had a strong odor of alcohol about him. Clearly, there was substantial evidence from which the jury could find that Stevens was intoxicated at the time of the accident.

Next, Stevens asserts that the evidence was insufficient, as a matter of law, to prove that he caused Watson's death. The evidence, as previously related, established that Childers had received a green arrow before undertaking his left-hand turn and that, when the arrow was green, Stevens would have faced a red light. No skid marks were found at the scene, indicating that Stevens never applied his brakes prior to striking Childers' car. As discussed above, Stevens was highly intoxicated. From all the evidence presented, the jury properly could have concluded that Stevens caused Watson's death.

Finally, Stevens asserts that the evidence is insufficient, as a matter of law, to prove that his conduct was gross, wanton, and culpable. Again, we focus upon Stevens' high level of intoxication, approximately three times the legal limit. This alone justifies a finding that Stevens' conduct was gross, wanton, and culpable. In addition to the high degree of intoxication, other facts support the jury's finding. Stevens

9

ran a red light, failed to apply his brakes before the collision, and did not know what he had struck.

VI

For the foregoing reasons, we will affirm Stevens' conviction for aggravated involuntary manslaughter.

<u>Affirmed</u>.