COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, McClanahan and Senior Judge Fitzpatrick
Argued at Salem, Virginia


TED MICHAEL STALLINGS, S/K/A
  TED MICHAEL STALLINGS, JR.
                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 2690-06-3                          JUDGE LARRY G. ELDER
                                                        DECEMBER 18, 2007
COMMONWEALTH OF VIRGINIA


                   FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                             Charles J. Strauss, Judge

              John P. Light (Williams, Morrison, Light and Moreau, on brief), for
              appellant.

              Leah A. Darron, Assistant Attorney General (Robert F. McDonnell,
              Attorney General, on brief), for appellee.


        Ted Michael Stallings, Jr. (appellant), appeals from his bench trial convictions for

brandishing a firearm and possessing a firearm after having been convicted of a felony.  On

appeal, he contends the trial court erroneously denied his motion to suppress because the initial

warrantless entry of his home by police was unreasonable; because the affidavit supporting the

warrant subsequently issued failed to provide a sufficient nexus between appellant's home and

the items to be seized; and because, due to the insufficient nexus and the failure of the officers to

disclose to the magistrate all facts of which they were aware, the officers' reliance on the warrant

could not have been in good faith.  We hold the emergency doctrine rendered the officers' initial

entry of appellant's home reasonable and, thus, that the two firearms they discovered in plain

view while inside, a revolver and a rifle, were properly admitted into evidence.  We hold further

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

that, based on the proper admission into evidence of the firearms found in plain view, any error in admitting the two shotguns and ammunition discovered in the full search conducted pursuant to the subsequently issued warrant was harmless. Thus, we affirm the challenged convictions.

## I.

Examining a trial court's ruling on a motion to suppress evidence allegedly seized in violation of the Fourth Amendment "presents a mixed question of law and fact that we review *de novo* on appeal. In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment." Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002) (citations omitted); see also Ornelas v. United States, 517 U.S. 690, 691, 699, 116 S. Ct. 1657, 1659, 1663, 134 L. Ed. 2d 911 (1996). "[T]he trial court, acting as fact finder, must evaluate the credibility of the witnesses . . . and resolve the conflicts in their testimony . . . ." Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 297 (1975). On appeal of a ruling denying a defendant's motion to suppress, the defendant has the burden to show that the trial court's ruling constituted reversible error. Murphy, 264 Va. at 573, 570 S.E.2d at 838.

## A.

### INITIAL ENTRY AND EMERGENCY DOCTRINE

"Among the many interests served by the Fourth Amendment, the privacy interest in one's home has few equals. . . . [However,] the Fourth Amendment's text endorses no absolutes. It . . . condemns only 'unreasonable' searches and seizures." Kyer v. Commonwealth, 45 Va. App. 473, 480, 612 S.E.2d 213, 217 (2005) (en banc). Pursuant to the emergency doctrine, as set out in Mincey v. Arizona, 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978), and recently reaffirmed in Brigham City v. Stuart, 547 U.S. ___, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006):

> [T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. . . . "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." Wayne v. United States, 115 U.S. App. D.C. 234, 241, 318 F.2d 205, 212 (opinion of Burger, J.).

Mincey, 437 U.S. at 392-93, 98 S. Ct. at 2413, 57 L. Ed. 2d at 300; see Stuart, 547 U.S. at ___, 126 S. Ct. at 1947, 164 L. Ed. 2d at 657-58; see also Kyer, 45 Va. App. at 480-82, 612 S.E.2d at 217-18 (discussing community caretaker and emergency aid doctrines); Reynolds v. Commonwealth, 9 Va. App. 430, 437, 388 S.E.2d 659, 663 (1990) (applying emergency aid doctrine). Thus,

> One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. . . . [L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. Mincey, [437 U.S.] at 392, 98 S. Ct. [at 2413], 57 L. Ed. 2d [at 300]; see also Georgia v. Randolph, 547 U.S. 103, [118], 126 S. Ct. 1515[, 1525], 164 L. Ed. 2d 208[, 224] (2006) ("[I]t would be silly to suggest that the police would commit a tort by entering . . . to determine whether violence (or a threat of violence) has just occurred or is about to (or soon will) occur[.]").

Stuart, 547 U.S. at ___, 126 S. Ct. at 1947, 164 L. Ed. 2d at 657-58.

The "emergency" test we adopted in Reynolds requires that:

> "'[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?'"

Reynolds, 9 Va. App. at 437, 388 S.E.2d at 663-64 (quoting State v. Resler, 306 N.W.2d 918, 922 (Neb. 1981) (quoting Root v. Gauper, 438 F.2d 361, 364-65 (8th Cir. 1971) (quoting Terry v. Ohio, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968)))). As the

- 3 -

Supreme Court made clear in Stuart, whether the officers' invocation of the emergency doctrine was pretextual is irrelevant; for purposes of the Fourth Amendment, the intrusion is to be judged under a standard of objective reasonableness. Stuart, 547 U.S. at ___, 126 S. Ct. at 1947, 164 L. Ed. 2d at 657-58; see Robinson v. Commonwealth, 273 Va. 26, 35-38 & n.2, 639 S.E.2d 217, 222-24 & n.2 (discussing Supreme Court's application of objective reasonableness standard to emergency aid exception in Stuart; noting that only exception to objective standard recognized by Supreme Court "involves searches 'undertaken pursuant to a scheme without individualized suspicion'"; and concluding that objective standard also applies to assessment of searches conducted pursuant to implied consent), cert. denied, ___ U.S. ___, 127 S. Ct. 2442, 167 L. Ed. 2d 1131 (2007).

Thus, to the extent our prior case law holds or implies that the emergency aid doctrine or community caretaker doctrine does not legitimize a search that is objectively reasonable but pretextual, Stuart implicitly overrules those holdings. See, e.g., Commonwealth v. Waters, 20 Va. App. 285, 290, 456 S.E.2d 527, 530 (1995) (holding application of community caretaker exception required a finding that "the officer is not investigating criminal conduct under the pretext of exercising his community caretaking function"); Reynolds, 9 Va. App. at 437, 438, 388 S.E.2d at 664 (implying that "emergency doctrine" would not apply in case where entry of residence was pretextual). Under Stuart, as long as the search is objectively reasonable under the emergency aid doctrine, it does not violate the Fourth Amendment. 547 U.S. at ___, 126 S. Ct. at 1947, 164 L. Ed. 2d at 657-58.

In Stuart, the Court held the facts confronting the officers provided them with "an objectively reasonable basis for believing both that [an] injured adult might need help [inside the house] and that the violence . . . was just beginning." 547 U.S. at ___, 126 S. Ct. at 1949, 164 L. Ed. 2d at 659. Those facts involved police officers who were responding to complaints about

a loud party at 3:00 a.m. Id. As the police approached the house, "they could hear from within 'an altercation occurring, some kind of a fight.'" Id. Because it was "'obvious that . . . knocking on the front door' would have been futile" and because "[t]he noise seemed to be coming from the back of the house," the officers proceeded to the back, where, through a window, they observed a fight taking place inside the kitchen. Id. They saw a "juvenile, fists clenched, . . . being held back by several adults," and then observed the juvenile "break[] free and strike[] one of the adults in the face, sending the adult to the sink spitting blood." Id. In ruling the officers' entry did not violate the Fourth Amendment, the Court held that they were not "required to wait until another blow rendered someone 'unconscious' or 'semi-conscious' or worse before entering" and noted that "[t]he role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties[] [or] . . . stop[ping] a bout only if it becomes too one-sided." Id. at 659-60, 164 L. Ed. 2d at 1949; see also, e.g., United States v. Booth, 455 A.2d 1351, 1356 (D.C. 1983) (upholding entry under emergency aid doctrine where officer "had received a radio report that an assault was in progress [at a particular address]; when he arrived at that address, the person answering the door . . . had dried blood on his face; and [the person] did not respond to [the] [o]fficer['s] . . . question as to where the blood came from").

In Kyer, by contrast, we held the officers' entry into a private residence was not justified by the emergency doctrine. The officers had just apprehended one of two burglars seen fleeing a break-in at the Southside Speedway. 45 Va. App. at 477, 612 S.E.2d at 215. Following a tip from the detained suspect, the officers proceeded to a particular residential address based on their suspicion that the second burglar resided there. Id. When the police arrived at that address at 4:00 a.m., they observed the front door was "open wide enough for an individual to 'walk through it without touching the door.'" Id. Receiving no response to their knocking, the officers entered the residence. Id.

In holding the officers' entry into a private residence was not justified by the emergency doctrine, we reasoned they were aware of "only one arguably suspicious circumstance" before entering the residence--"an open [apartment] door" at 4:00 a.m. "on an August night." Id. at 481, 612 S.E.2d at 217.

> There were no signs of forced entry . . . . No one called out for help. No sounds or observations suggested panic or danger within the apartment. There were no reports from neighbors about any unique medical concerns or other vulnerabilities of the apartment's occupants. Nor did any of Kyer's neighbors report any suspicious circumstances suggesting foul play.

Id. at 481-82, 612 S.E.2d at 217-18 (footnote omitted). In addition, we noted, the officers "could [not] reasonably assume Kyer returned home to commit 'a crime in his own residence.'" Id. at 481 n.3, 612 S.E.2d at 217 n.3. On those facts, we held a reasonable police officer "'would not believe an emergency existed.'" Id. at 482, 612 S.E.2d at 218 (quoting State v. Swenson, 799 P.2d 1188, 1190 (Wash. Ct. App. 1990)).

The facts here are more akin to those in Stuart than in Kyer. The evidence, viewed in the light most favorable to the Commonwealth, established police received information from Debra Yeatts, appellant's landlord and neighbor, that appellant's sister was concerned for the safety of appellant's child, a ten- or eleven-year-old girl who was visiting appellant that weekend. According to information Yeatts received from appellant's sister, the child "had been calling" appellant's sister, reporting she was scared because appellant "was shooting guns in the house." When Yeatts went to appellant's residence to investigate, appellant pointed a shotgun at her through his glass front door. Yeatts then fled and phoned police.

When Investigator Williams arrived, Yeatts recounted what appellant's sister had told her and indicated that she herself had seen appellant with a gun because he had pointed it at her and threatened to kill her when she tried to check on appellant's child. Finally, Yeatts told

Investigator Williams that she did not know where appellant's child was at that point.[1]  When Investigator Williams attempted to investigate, he found appellant's front door was open, although the external glass door was closed, and no one responded to Williams's "announce[ment]" that he was with the Sheriff's Office and that "anyone here" should "please come up."  This evidence was sufficient to permit a reasonable police officer to conclude that appellant's young daughter might be inside the residence and seriously injured or threatened with such injury and "in need of immediate aid," either because appellant might injure her intentionally or recklessly or because she might be a threat to herself if left alone inside the residence with a firearm.  See Mincey, 437 U.S. at 392-93, 98 S. Ct. at 2413, 57 L. Ed. 2d at 300; Kyer, 45 Va. App. at 481, 612 S.E.2d at 218 (noting *absence* of "reports from neighbors about . . . vulnerabilities of the [residence's] occupants"); see also United States v. Antwine, 873 F.2d 1144, 1146-47 (8th Cir. 1989) (where police lured person who had brandished weapon outside residence and arrested him, holding police were justified in making warrantless entry and retrieving gun to assure safety of eleven-year-old boy and small girl they found inside residence); State v. Drennan, 101 P.3d 1218, 1231-32 (Kan. 2004) (evidence sufficient to provide objectively reasonable basis for entry under emergency aid doctrine where police knew of prior history of violence between defendant and live-in girlfriend; neighbor reported hearing argument and woman's scream followed by silence; defendant did not come to door immediately when officer knocked and rang bell; and when defendant did open door, he was "sweaty and agitated,"

---

[1] Yeatts testified she informed Investigator Williams appellant had been looking for his child and that, for this reason, she assumed the child was not in appellant's house.  Yeatts also testified she told Williams she saw appellant and his brother drive away from the neighborhood. However, Investigator Williams testified Yeatts reported merely that she did not know where appellant's daughter was, and he gave no indication Yeatts told him she saw appellant leave the scene.  The trial court was entitled to disregard Yeatts's testimony on these points and to credit Investigator Williams's testimony about what information he had immediately prior to entering appellant's residence.  See Witt, 215 Va. at 674, 212 S.E.2d at 297.

refused repeated requests to tell officers where girlfriend was, and eventually told them she was not at home but would not state where she had gone). Because Investigator Williams's entry of the residence was objectively reasonable under the emergency doctrine, it is irrelevant that he may also have harbored a desire when he entered to investigate appellant's probable criminal conduct in brandishing a firearm and possessing a firearm after having been convicted of a felony. See Stuart, 547 U.S. at ___, 126 S. Ct. at 1947, 164 L. Ed. 2d at 657-58.

Thus, the initial entry that led to the plain view discovery of the revolver and rifle was reasonable under the Fourth Amendment.

B.

DISCOVERY OF ADDITIONAL WEAPONS PURSUANT TO SEARCH WARRANT

Appellant, in addition to contending the weapons and ammunition were inadmissible because they were found pursuant to the initial warrantless entry that was invalid under the emergency aid exception, argues they also are inadmissible because the subsequently issued search warrant and affidavit, which did not mention the weapons found in plain view and failed to indicate a nexus between the firearms offenses and the place to be searched, alleged insufficient facts to establish probable cause. Finally, he contends the good faith exception did not apply. The trial court concluded the affidavit and warrant were clearly deficient but that the good faith exception to the exclusionary rule permitted admission of the shotguns into evidence at trial.

Assuming without deciding the trial court erred in concluding the exclusionary rule applied, we hold this error was harmless on the facts of this case. As with all forms of constitutional error, "'[w]here a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed.'" Kil v. Commonwealth, 12 Va. App. 802, 812, 407 S.E.2d 674,

680 (1991) (quoting Rose v. Clark, 478 U.S. 570, 579, 106 S. Ct. 3101, 3106, 92 L. Ed. 2d 460

(1986)). Constitutional error does not affect a verdict and, therefore, is harmless beyond a

reasonable doubt "if a reviewing court can conclude, without usurping the jury's [or court's] fact

finding function, that, had the error not occurred, the verdict would have been the same."

Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc).

The admission of evidence obtained in violation of the federal constitution is reversible error

only if "'there is a reasonable possibility that the evidence complained of might have contributed

to the conviction.'" Quinn v. Commonwealth, 25 Va. App. 702, 719, 492 S.E.2d 470, 479

(1997) (quoting Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S. Ct. 229, 230, 11 L. Ed. 2d 171,

173 (1963)).

> "In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case."

Stevens v. Commonwealth, 272 Va. 481, 486, 634 S.E.2d 305, 308 (2006) (quoting Lilly v.

Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999)).

Here, the shotguns and ammunition that we assume without deciding were erroneously

admitted into evidence were merely cumulative of the evidence of the rifle and revolver that

were found in plain view in appellant's residence when the police made what we have held was a

lawful entry under the emergency aid doctrine.[2] Ms. Yeatts, the victim of the brandishing

offense, identified the rifle found in plain view on the bed in appellant's residence as "look[ing]

---

[2] Appellant never argued in the trial court that, if the initial entry was lawful under the emergency doctrine and legitimized the discovery of the weapons found in plain view, the officer's seizure of the "plain view" weapons during the second entry violated the Fourth Amendment. To the contrary, he argued that the officers "essentially seized everything" during the first entry. Thus, per Rule 5A:18, we hold this issue is not properly before us, and we do not consider it.

like the weapon [appellant] had" "when he threatened her" because "[i]t's long and it's got that thing on it right there," which she subsequently identified as "the scope on top of it." She also testified that appellant went back into his residence with the gun after he had threatened her. Appellant attempted to discredit Yeatts's testimony due to the fact that she had back trouble and admitted to the regular use of a narcotic patch for pain relief, but the trial court expressly found her testimony to be credible. In concluding appellant was guilty, the trial court made the following statements:

> Ms. Yeatts, obviously while not being an expert on guns or maybe having a great deal of familiarity with guns, identified the gun as being similar to the one she saw within a brief period of time. A weapon similar to the one she saw was found in the residence on the bed in plain view. It's a firearm. It's an operational firearm. The Court finds [appellant] is guilty of both charges[, brandishing a firearm and possessing a firearm after having been convicted of a felony].

In finding appellant guilty, the trial court made no mention whatever of the shotguns that were found in the bedroom closet and were never shown to have been in appellant's actual possession. Thus, we may conclude beyond a reasonable doubt, "without usurping the [court's] fact finding function, that, had the [claimed] error not occurred, the [result] would have been the same." Lavinder, 12 Va. App. at 1005, 407 S.E.2d at 911.

## II.

For these reasons, we hold the emergency doctrine rendered the officers' initial entry of appellant's home reasonable and, thus, that the rifle and revolver they discovered in plain view while inside were properly admitted into evidence. To the extent the trial court may have erred in refusing to suppress the shotguns found in the subsequent search pursuant to a warrant, we conclude beyond a reasonable doubt that the claimed error was harmless. Thus, we affirm the challenged convictions.

Affirmed.

- 10 -