COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges McCullough and Decker
Argued at Chesapeake, Virginia

UNPUBLISHED

DEBORA SUE AUMAN

MEMORANDUM OPINION[*] BY
v.        Record No. 1783-13-1          JUDGE MARLA GRAFF DECKER
OCTOBER 21, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
R. Bruce Long, Judge

John E. Robins, Jr., for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Debora Sue Auman appeals her conviction for vehicular involuntary manslaughter in

violation of Code § 18.2-36.1.  She argues that the Commonwealth failed to present sufficient

evidence to prove either that she was "under the influence" of alcohol within the meaning of the

statute or that any impairment was the proximate cause of the victim's death.  We hold that the

evidence was sufficient to establish the two challenged elements of the offense, and therefore we

affirm the conviction.

## I.  BACKGROUND

In this Court's review of the sufficiency of the evidence, we view the record in the light

most favorable to the Commonwealth.  Stevens v. Commonwealth, 272 Va. 481, 484, 634 S.E.2d

305, 307 (2006); Davis v. Commonwealth, 57 Va. App. 446, 451, 703 S.E.2d 259, 262 (2011).

To do so, we "'discard the evidence of the accused in conflict with that of the Commonwealth,'"

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and accept as true all the credible evidence favorable to the prosecution as well as all fair inferences that may be drawn from the record. Whitfield v. Commonwealth, 57 Va. App. 396, 400, 702 S.E.2d 590, 592 (2010) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).

On the morning of June 7, 2012, Alvin Wilson left his home and walked alongside southbound Route 17 to go meet his ride for work.[1] It was daylight, and the roadway was clean and dry. Between 6:00 a.m. and 6:30 a.m., the appellant, driving in the southbound lane of Route 17, struck Wilson with her car. He did not survive the impact.

Canty Turner witnessed the accident. Shortly after sunrise that day, Turner was traveling behind the appellant on Route 17 in the left passing lane. The appellant was about twelve car lengths in front of him in the right lane. They were both driving at approximately 50 to 55 miles per hour.

Turner noticed the appellant's sport utility vehicle (SUV) briefly swerve "off the road." Shortly thereafter, Turner again saw the appellant's vehicle drive off the road in another "S motion," "just on, off, back on" the road. On that occasion, he noticed "some things flying from her car" that "looked like clothes [and] shoes." Turner testified that although he did not see the collision, he saw Wilson walking between the white line and the grass moments before the fatal accident.

Steven Democko, a second witness, was also driving southbound on Route 17. His vehicle was in the left lane. According to Democko, the appellant hit something on the side of the road. He saw Wilson "fly[] up over" the appellant's car. Democko stopped his car and saw a man's body lying in the ditch next to the road.

---

[1] Route 17 is a four-lane highway divided by a grassy median. The posted speed limit is 55 miles per hour. The distance between the white line marking the edge of the southbound travel lane and the grass off the shoulder of the road is approximately two and one-half feet.

The appellant stopped her SUV immediately after hitting Wilson. Witnesses described her demeanor as "a little irate," upset, and hysterical. The appellant had struck Wilson squarely with the front of her automobile. The vehicle sustained front-end damage to the passenger's side and the windshield. The victim died from severe blunt trauma injury to his skull as a result of the impact from the car.

Sergeant Diana Shuster, with the Gloucester County Sheriff's Office, was one of the first officers to arrive at the scene. Shuster detected an odor of alcohol on the appellant as she spoke with her.

Virginia State Trooper John Lafond arrived at 6:43 a.m. Consistent with Sergeant Shuster's assessment, Trooper Lafond noticed that the appellant smelled moderately of alcohol. The appellant was still visibly upset. She told Lafond that she had "seen the man" as she approached him in her vehicle. She added that "she looked down to get her coffee cup[,] and when she looked back up, the man was in the middle of . . . [her] travel lane."

In response to the trooper's questions, the appellant admitted that she drank two cocktails at dinner at approximately 9:30 p.m. the previous evening and consumed three or four beers after she got home. The two cocktails were "Perfect Margaritas" that contained "top shelf" tequila, Cointreau, and Grand Marnier. The appellant estimated that she drank her last beer approximately five hours before the accident. She also said that she had not consumed alcohol since the accident.

Lafond administered several field sobriety tests to the appellant. When asked to recite the alphabet from the letter "D" to the letter "Q," the appellant attempted the test, but omitted three of the letters. She then told the trooper that she "could not do the alphabet." However, on her second attempt, the appellant successfully recited the designated letters. Upon the trooper's request, she also correctly counted backward from 88 to 66. The trooper next administered the

"walk-and-turn test." The appellant stumbled on the fourth step and put her arms out to balance herself, but completed the test.

After conducting the field sobriety tests and then administering a preliminary breath test, Lafond arrested the appellant. A subsequent breath test administered at 8:26 a.m. established that the appellant's blood alcohol concentration (BAC) was 0.08 grams per 210 liters of breath.

Forensic toxicologist Dr. James Hutchings testified that alcohol "acts as a central nervous system depressant" that slows down an individual's ability to process information. Hutchings extrapolated from the 0.08 grams per 210 liters of breath BAC reading taken at 8:26 a.m., and opined that appellant's BAC at the time of the accident was between 0.10 and 0.13% "by weight by volume." He testified that generally the effects of alcohol in that range would be "slowed perception processing and execution of the responses," but not gross motor impairment. Hutchings further explained that it would also involve decreased "psychomotor functions" and that the individual's "time to perceive would be slowed down."

Virginia State Trooper Steven Kean, the crash investigator of the fatality, testified that the event data recorder in the appellant's vehicle recorded the brakes being depressed three seconds before the impact. Kean explained that the brakes were "not totally engaged," consistent with "a very slow decrease in the speed, . . . not a rapid deceleration." The trooper further stated that the data recorder specifically logged the vehicle's speed at 59 miles per hour at three seconds before impact, 58 miles per hour at two seconds, and 55 miles per hour at one second. There were no skid marks on the scene, and the only scuff mark crossed over the white edge line.

The trial court convicted the appellant of vehicular involuntary manslaughter.[2] She was sentenced to a total of five years in prison, with the entire sentence suspended.

---

[2] The appellant was also convicted of driving while intoxicated, in violation of Code § 18.2-266. She does not challenge that conviction.

## II. ANALYSIS

The appellant argues that the evidence was insufficient to prove that she was "impaired to the extent required" by Code § 18.2-36.1(A). In the alternative, she contends that the Commonwealth failed to prove that any impairment was the proximate cause of the victim's death. We disagree with both arguments for the reasons that follow.

In the context of review of the sufficiency of the evidence, this Court upholds the conviction unless it was "'plainly wrong or lacked evidence to support it.'" See, e.g., Davis, 57 Va. App. at 461, 703 S.E.2d at 266 (quoting Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005)). Critical to our analysis is that we apply a very specific standard of review on appeal. The fact finder was in the position to see and hear the witnesses as they testified and to make credibility determinations. Consequently, decisions regarding the credibility of the witnesses and the weight of the evidence are matters left solely to the fact finder below, in this case the trial court. See, e.g., Davis v. Commonwealth, 230 Va. 201, 206, 335 S.E.2d 375, 379 (1985); Wood v. Commonwealth, 57 Va. App. 286, 306-07, 701 S.E.2d 810, 820 (2010). We do not substitute as the trier of fact.

Code § 18.2-36.1(A) categorizes any driving "under the influence" in violation of Code § 18.2-266(ii) that results in the unintentional death of another person as involuntary manslaughter. Code § 18.2-266(ii) prohibits driving or operating a motor vehicle while under the influence of alcohol. "A conviction for [vehicular] involuntary manslaughter in violation of Code § 18.2-36.1(A) . . . requires proof that the accused was driving under the influence, and that a causal connection exists between the driver's intoxication and the death of another person." Goodman v. Commonwealth, 37 Va. App. 374, 386-87, 558 S.E.2d 555, 561-62 (2002) (citations omitted).

This Court applies this appellate standard of review and the legal principles associated with vehicular involuntary manslaughter to the facts of this case when reviewing the decision of the trial court.

*A. Under the Influence*

Code § 18.2-36.1(A) requires proof that the defendant was "under the influence" of alcohol or drugs.[3] Factors relevant to the determination of whether a defendant was under the influence of alcohol include blood alcohol content, expert testimony about the effect of that level of alcohol in the blood, cognitive impairment, the amount of alcohol consumed, and the odor of alcohol about the person. See Stevens, 272 Va. at 488, 634 S.E.2d at 309-10. A person is considered intoxicated if she "has drunk enough alcoholic beverages to so affect [her] manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation." Clemmer v. Commonwealth, 208 Va. 661, 664, 159 S.E.2d 664, 666 (1968); see also Farren v. Commonwealth, 30 Va. App. 234, 240, 516 S.E.2d 253, 256-57 (1999) (holding that such evidence is sufficient to support a finding that a person was "under the influence" of alcohol).

Further, in a prosecution of vehicular involuntary manslaughter, Code § 18.2-269 provides "a method of proving intoxication." Davis, 57 Va. App. at 457 n.7, 703 S.E.2d at 264 n.7. This code section allows the inference that "the accused was under the influence when the accused has a blood alcohol concentration of 0.08 or higher" at the time of the offense.[4] See id.

---

[3] In contrast, Code § 18.2-266(i) penalizes driving or operating a motor vehicle "while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath."

[4] Code § 18.2-269(A) states, in pertinent part:

> In any prosecution for a violation of § 18.2-36.1 . . . the amount of alcohol . . . in the blood of the accused at the time of the alleged offense . . . shall give rise to the following rebuttable

In this case, the evidence proved that the appellant recently drank two cocktails and three or four beers. Her last drink, by her own admission, was about five hours before the accident. A witness saw the appellant's SUV swerve twice just before she hit the victim. Two responding officers noticed the odor of alcohol on the appellant's person after the fatal incident. She failed to satisfactorily perform two field sobriety tests at the scene. About two hours and thirty minutes after she hit the victim with her vehicle, the appellant's BAC per 210 liters of breath was still sufficiently high to support a conviction for driving under the influence of alcohol. See Code § 18.2-266(i). Further, the Commonwealth's expert testified that the appellant's BAC at the time of the accident was between 0.10 and 0.13 "by weight by volume." He also explained that typically an individual with that blood alcohol level would be slower to react and respond to external stimuli. This assessment was consistent with the evidence that the appellant braked only slightly before impact and that the decrease in the speed of the vehicle was slow rather than rapid deceleration. Further, there were no skid marks on the roadway. This evidence was sufficient for the trial court to conclude that the appellant was under the influence of alcohol at the time that she fatally struck Wilson with her vehicle.[5]

presumption[]: If there was at that time . . . 0.08 grams or more per 210 liters of the accused's breath, it shall be presumed that the accused was under the influence of alcohol intoxicants at the time of the alleged offense . . . .

Rather than creating a mandatory presumption, Code § 18.2-269 "allows a permissive inference that the fact finder is free to reject." Yap v. Commonwealth, 49 Va. App. 622, 636, 643 S.E.2d 523, 530 (2007) (reviewing the application of Code § 18.2-269 in the context of a conviction for driving under the influence). "[A] permissive inference is one that allows, but does not require, the fact finder to infer a possible conclusion from the facts proven, while placing no burden upon the accused." Id. at 632, 643 S.E.2d at 527.

[5] We note that the appellant's reliance on the principle that the odor of alcohol on a person's breath alone cannot establish intoxication is unavailing. See Baker v. Taylor, 229 Va. 66, 69, 326 S.E.2d 669, 671 (1985). Here, as discussed in this opinion, the evidence goes far beyond the mere odor of alcohol on the appellant's person.

*B. Causation*

Causation is an issue of fact within the purview of the trial court as the trier of fact.  See Davis, 57 Va. App. at 462, 703 S.E.2d at 266.  "A proximate cause is 'an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred.'"  Brown v. Commonwealth, 278 Va. 523, 529, 685 S.E.2d 43, 46 (2009) (quoting Willams v. Joynes, 278 Va. 57, 62, 677 S.E.2d 261, 264 (2009)); Davis, 57 Va. App. at 462, 703 S.E.2d at 266.  Factors relevant to causation include the driver's level of intoxication, failure to react, smell of alcohol, slurred speech, physical impairment, and expert testimony on the impaired perception that accompanies intoxication.  See, e.g., Stevens, 272 Va. at 488, 634 S.E.2d at 309-10; Pollard v. Commonwealth, 20 Va. App. 94, 99, 455 S.E.2d 283, 286 (1995).  Further, "[t]here can be more than one proximate cause[,] and liability attaches to each person whose negligent act results in the victim's injury or death." Gallimore v. Commonwealth, 246 Va. 441, 447, 436 S.E.2d 421, 425 (1993); see also Davis, 57 Va. App. at 462, 703 S.E.2d at 266.

In Davis, 57 Va. App. at 463, 703 S.E.2d at 267, this Court held that the evidence was sufficient to support a vehicular aggravated involuntary manslaughter conviction where the defendant struck a person who was lying in the road.  The defendant's failure to see the victim and take evasive action, his 0.15 blood alcohol level, and expert testimony about the negative cognitive effects of his alcohol level provided a sufficient basis for the jury to find causation.  Id. Davis is instructive in the instant case.

Much of the same evidence that supports proof that the appellant was under the influence of alcohol also supports proof of the element of causation.  The appellant abruptly swerved her vehicle to the right twice just prior to hitting the victim who was walking on the side of the road. Expert testimony established that an individual with the appellant's BAC at the time of the

incident would have "slowed perception processing and execution of the responses." The expert also testified that alcohol is a central nervous system depressant that slows down perception time and decreases psychomotor functions. The appellant acknowledged that she saw Wilson prior to the accident, but rather than moving to the lane to her left or significantly slowing her speed, she claims to have looked down and reached for her coffee. According to the appellant, when she looked up, Wilson was directly in front of her vehicle. At the scene of the accident, she was unable to complete two field sobriety tests in the manner directed. The event data recorder in her car revealed that she had barely applied her brakes before impact, that her speed was 59 miles per hour three seconds prior to hitting the victim, and 55 miles per hour one second before contact. Her vehicle's brakes were only slightly engaged, consistent with a slow decrease in speed. This evidence, in line with Davis, provides more than a sufficient basis to find causation attributable to the appellant's intoxicated state.

The appellant urges us to reject Turner's testimony that he saw the appellant's SUV swerve. Her "hypothesis of innocence" at trial was that she did not swerve and that the victim was in the middle of her travel lane. See generally Blow v. Commonwealth, 52 Va. App. 533, 539, 665 S.E.2d 254, 257 (2008) (explaining that when a conviction is based on circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence). However, the trial court accepted Turner's testimony and rejected the appellant's claim. Witness credibility, unless inherently incredible, is solely within the purview of the fact finder. See, e.g., Wood, 57 Va. App. at 302, 701 S.E.2d at 817-18. Additionally, a second witness testified that the appellant hit something that was on the side of the road. Consistent with the testimony of Turner and the other witness, the trial court expressly found that the victim was on the side of the road when he was struck by the appellant's SUV. This conclusion cannot be disturbed on appeal. See generally Taylor v. Commonwealth, 61 Va. App. 13, 30, 733 S.E.2d 129, 138 (2012) (holding

that the finder of fact's rejection of a hypothesis of innocence is "'binding on appeal unless plainly wrong'" (quoting Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997))). Further, even if Wilson had been in the road, that fact would not have mitigated the appellant's criminal culpability. See Hubbard v. Commonwealth, 243 Va. 1, 14, 413 S.E.2d 875, 882 (1992) (holding that in an involuntary manslaughter case, a decedent's careless conduct must rise to the level of an "independent, intervening act alone causing the fatal injury" in order to exonerate the accused from criminal liability); Davis, 57 Va. App. at 463, 703 S.E.2d at 267 (affirming the vehicular manslaughter conviction where the victim was "lying in the road"); O'Connell v. Commonwealth, 48 Va. App. 719, 728, 634 S.E.2d 379, 384 (2006) ("'[C]ontributory negligence has no place in a case of involuntary manslaughter . . . .'" (quoting Banks v. Commonwealth, 41 Va. App. 539, 549, 586 S.E.2d 876, 880 (2003))).

Finally, the appellant cites Waters v. Holloman, 216 Va. 726, 730, 222 S.E.2d 549, 553 (1976), for the proposition that a driver's intoxication at the time of an accident by itself does not support the inference that the intoxication was a proximate cause of the crash. Cf. Hall v. Commonwealth, 32 Va. App. 616, 636, 529 S.E.2d 829, 839 (2000) (en banc) (holding that a proffered jury instruction stating that causation separate from intoxication alone was necessary to convict the defendant was repetitive of the instruction given that tracked the language of the statute). The appellant's reliance on Waters is misplaced in light of the circumstances, including but not limited to her intoxication, supporting the trial court's finding of causation.

Based upon all of the evidence, viewed in the light most favorable to the Commonwealth, a rational fact finder could have concluded that the appellant's failure to keep a proper lookout, maintain control of her vehicle, and respond promptly resulted from the extent of her intoxication. Accordingly, the evidence was sufficient for the trial court to conclude that the appellant's intoxicated condition caused the victim's death.

## III.  CONCLUSION

The evidence, viewed under the appropriate standard of review, supports the findings that the appellant was under the influence of alcohol within the meaning of Code § 18.2-36.1(A) and that her impairment was a proximate cause of the fatality.  Consequently, we affirm the conviction.

<u>Affirmed.</u>