UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Beales, Huff and Athey
Argued at Norfolk, Virginia


MARTRELL DAE-SHAWN BEAMON, S/K/A
 MARTRELL DAE SHAWN BEAMON

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1695-18-1                      JUDGE GLEN A. HUFF
                                                    NOVEMBER 12, 2019
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Robert H. Sandwich, Jr., Judge

Gregory K. Matthews (Gregory K. Matthews, PC, on brief), for
appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief) for appellee.


Martrell Dae-Shawn Beamon ("appellant") appeals his convictions for rape, forcible

sodomy, abduction with intent to defile, and three counts of use of a firearm in the commission

of a felony. After a jury trial, the Circuit Court for the City of Suffolk sentenced appellant to a

total of one hundred twenty-three years' imprisonment with seventy years suspended.[1]

Appellant raises two assignments of errors. First, appellant contends the evidence was

insufficient to support his convictions because the testimony of the victim, F.J., was inherently

incredible. Second, appellant contends the trial court erred by denying his motion—because the

court found it lacked jurisdiction—to set aside the verdict.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Because appellant was a juvenile when he committed the offense and was indicted, the
trial court sentenced him "without the intervention of a jury," pursuant to Code § 16.1-272.

This Court affirms appellant's convictions. First, although there may have been some inconsistencies in the victim's testimony, the trial judge credited her testimony and it was not inherently incredible. Second, the trial court did not err in denying appellant's motion to set aside the verdict. Therefore, we affirm appellant's convictions.

## I. BACKGROUND

"This Court considers 'the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below.'" Hawkins v. Commonwealth, 64 Va. App. 650, 652 (2015) (quoting Bolden v. Commonwealth, 275 Va. 144, 148 (2008)). So viewed the evidence is as follows:

Around midnight, F.J. was walking home from work, after stopping briefly at her mother's home. Appellant, a stranger to F.J., stopped her and asked to borrow her phone. She let him, he returned it, and then he asked to use it again. As he was using her phone the second time, she noticed he had a gun tucked into the front of his pants. He instructed her to come with him into an alley. She went with him because she believed he was going to give her phone back and because she was scared not to comply.

After they entered the alley, appellant tried to remove F.J.'s pants. They struggled for a few moments before appellant succeeded. He then held her down and engaged in intercourse with her. Appellant was wearing a condom. F.J. continued to struggle and told appellant "no." Appellant asked F.J. "do you want a bullet?" He then "flipped" her over and "forced [her] to suck his penis." She bit him, and he struck her in the face with the gun. She hit him in return, and he fled. F.J. called the police from another phone she carried. She noticed after appellant fled that she had some blood on her clothing.

She was taken to the hospital. Although the Sexual Assault Nurse Examiner ("SANE nurse") did not find any genital injuries, F.J. did have a red mark on the side of her face

consistent with being struck. Five hours after the rape, she was still in pain from her being struck. The SANE nurse testified that a lack of genital injury is not uncommon with rape victims and that based on F.J.'s description of the attack, the nurse did not expect to find any injuries.

While F.J. was at the hospital, she spoke to Detective Heather Linville about the assault. She was upset, crying, and was difficult to understand throughout much of the conversation. Although the story F.J. told was largely consistent with her trial testimony, there were a few things that were different. For example, she told Detective Linville that appellant had asked if she "wanted to make some money." At one point, she told Detective Linville she had responded "yes" because he had a gun, and at another point she told the detective she responded "no." She also told Detective Linville that appellant had used two condoms.

Police searched the area where the attack occurred. They discovered a BB gun in a nearby church parking lot. They also found a used condom. The condom had both sperm and blood on the inside. Appellant could not be eliminated as a major contributor of the DNA mixture found. F.J.'s boyfriend could not be eliminated as a minor contributor to the DNA mixture, and F.J. acknowledged that she had had consensual sex with her boyfriend on the day before the attack. The chances of an unrelated individual randomly matching the DNA profile developed was less than 1 in 7.2 billion.

About two weeks after the attack, F.J. was at her mother's home when she observed appellant on the street. F.J. ran into the house crying. She pointed out appellant on the street and told her mother he was the individual who had raped her. F.J. then called the police. Based on the description F.J. provided about what appellant was doing and wearing, the police were able to locate and arrest him. They showed F.J. a photo lineup of six pictures. She became visibly upset, but confidently identified appellant as her attacker, stating she was still having nightmares about the attack.

After his arrest, appellant denied having any interaction with any woman about a phone. He stated he had not had sex for several months. At trial, however, he testified that F.J. had asked to perform oral sex on him. She asked repeatedly, and he finally agreed. He claimed she was the one who directed him to the alley. He testified that she instructed him to expose his penis and, after he had put on a condom, willingly performed fellatio on him. He took her phone and left after they struggled when she reached into his pocket to take his cash.

Appellant gave police permission to photograph his penis. There was no evidence that it was injured at the time, but the SANE nurse that examined F.J. also testified that she expected a bite wound would have completely healed in the two weeks between the bite and when appellant was identified and arrested.

Appellant was tried by a jury in June of 2017. At the conclusion of the Commonwealth's evidence, he moved to strike. The trial court denied the motion. Appellant renewed the motion after he presented his evidence, and the trial court again denied the motion. The jury convicted appellant. The trial court scheduled sentencing for the following February.

In the interim, appellant obtained a new attorney. A few days in advance of the scheduled sentencing, appellant moved to reconsider the oral motion that had been made at the close of trial to set aside the verdict. The motion to reconsider was based on "newly discovered evidence" in the form of a recantation from F.J., signed in the presence of appellant's attorney that stated appellant "never raped me."

The trial court held a hearing on the motion. F.J. testified. She admitted she had visited appellant in jail twice but she only did so because appellant's family kept calling her. She felt threatened and went to the jail with them, hoping they would leave her alone. They called more than twenty times, and appellant's mother showed up at F.J.'s work at least once. She admitted signing, in front of appellant's attorney, the note saying appellant did not rape her, but stated she

was crying the whole time because she knew her initial testimony was true. She stated her initial trial testimony was true and that appellant had, in fact raped her. She denied that she called appellant her "baby" and denied that she had said she was excited for him to get out of jail as appellant's family claimed she had.

The trial court denied the motion. First, the trial court found it did not have jurisdiction to consider the motion because more than twenty-one days had elapsed since it entered the conviction orders.[2] Second, the trial court concluded that the appropriate procedure would have been filing a writ of actual innocence. It assumed, in the alternative, that if it had jurisdiction then the trial court would need to analyze F.J.'s recantation in light of the standards for a writ of actual innocence. It found, among other things, that her recantation was the result of pressure by appellant's family. It also found the evidence was insufficient for it to conclude that F.J.'s recantation was true. Ultimately, in its final sentencing orders, the trial court denied the motion to set aside the verdict because it found "that the victim's recantation of her trial testimony was made under duress and/or coercion."

## II. SUFFICIENCY OF THE EVIDENCE

### A. Standard of review

"When the sufficiency of the evidence is challenged on appeal, '"we presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it."'" Stevens v. Commonwealth, 46 Va. App. 234, 248 (2005) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)), aff'd, 272 Va. 481 (2006). This Court "determine[s] whether the evidence, viewed in the light most favorable to the prevailing party, and the reasonable inferences fairly deducible from that evidence support

---

[2] The Commonwealth urged this conclusion at the trial court, but has since conceded the trial court did have jurisdiction.

each and every element of the charged offense." Cottee v. Commonwealth, 31 Va. App. 546, 554-55 (2000). This Court "must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Id. at 555 (quoting Watkins v. Commonwealth, 26 Va. App. 335, 349 (1998)). Thus, "when 'faced with a record of historical facts that supports conflicting inferences,' a court reviewing the sufficiency of the evidence 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any . . . conflicts [in the evidence] in favor of the prosecution, and must defer to that resolution.'" Harper v. Commonwealth, 49 Va. App. 517, 523 (2007) (quoting Jackson v. Virginia, 443 U.S. 307, 326 (1979)).

B. Analysis

Appellant argues F.J.'s testimony was inherently incredible. He points to various alleged inconsistencies in F.J.'s testimony to say her claim that appellant raped her is unworthy of belief. He claims the physical evidence is consistent with his story that the whole incident was a prostitution transaction gone wrong. Because the trial court as the finder of fact believed her story and it is not so contrary to human experience to be beyond belief, this Court affirms appellant's convictions.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Elliott v. Commonwealth, 277 Va. 457, 462 (2009). This Court gives "deference to the fact finder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." Id. Thus, this Court must accept "the trial court's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" Nobrega v. Commonwealth, 271 Va. 508, 518 (2006) (quoting Walker v. Commonwealth, 258 Va. 54,

- 6 -

70-71 (1999)).  "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'"  Juniper v. Commonwealth, 271 Va. 362, 415 (2006) (quoting Cardwell v. Commonwealth, 209 Va. 412, 414 (1968)).  In other words, this Court cannot say a witness' testimony is inherently incredible unless it is "so contrary to human experience as to render it unworthy of belief."  Johnson v. Commonwealth, 58 Va. App. 303, 315 (2011) (quoting Robertson v. Commonwealth, 12 Va. App. 854, 858 (1991)).

"The mere fact that a witness may have . . . given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief."  Juniper, 271 Va. at 415.  "The power to segregate a witness's testimony into the believable, partly believable, or wholly unbelievable is an exercise of decisional discretion intrinsic to the factfinding task and essential to its proper performance."  Harper, 49 Va. App. at 523.  "Furthermore, a fact finder's evaluations of credibility are not limited to choosing between competing accounts offered by different witnesses, but often include, as in this case, resolving conflicts in a single witness' testimony, accepting that part of the testimony it deems credible and rejecting the portion it deems incredible."  Commonwealth v. McNeal, 282 Va. 16, 22 (2011).

Appellant points to inconsistencies between what F.J. told police and her testimony on the stand to claim that her testimony was unworthy of belief.[3]  None of the inconsistencies, either individually or in combination, are such that would render her testimony completely unworthy of

---

[3] Appellant also claims that F.J.'s mental shortcomings contributed to making her testimony inherently incredible.  Appellant did not, however, object to the admission of her testimony by claiming she was an incompetent witness.  Thus, the jury was entitled to consider her mental status and how it affected her credibility.  Although the jury could have done what appellant asks this Court to do—find her limited mental capabilities and the inconsistencies in her testimony made her not credible—the jury also could have found that her mental status explained some of the difficulty she had in telling an absolutely coherent story and disregarded the minor inconsistencies.  Either course was permissible for the jury.  The jury obviously chose the latter, and this Court will not disturb that determination.

belief. Weighing F.J.'s credibility in light of the inconsistencies was the jury's responsibility, and this Court will not usurp that role. The main points of her story remained wholly consistent: Appellant asked to use F.J.'s phone. While he still had the phone, she observed his firearm in his pants. He directed her back into the alley. She went with him because he still had her phone and she was afraid not to comply. They struggled as he forcibly removed her pants and underwear. He then forcibly engaged in intercourse with her and then stuck his penis in her mouth. He was wearing a condom. She bit his penis, and he hit her in the face with the gun and then ran away.

Moreover, the physical evidence is consistent with her story. The police found a used condom at the scene, and appellant could not be eliminated as a DNA contributor. The police also found the gun appellant used near the scene. F.J.'s face had marks consistent with being struck. Each of these things supports her version of events – i.e., that appellant raped her.

The jury was entitled to judge F.J.'s credibility by taking into account the inconsistencies between F.J.'s testimony and her statements to police, such as how many times appellant asked to borrow the phone, whether F.J. saw him dial a number, the number of condoms used, and whether appellant asked her if she wanted to make some money before directing her to the alley. But the jury had that information before it and chose to find F.J. credible. This Court will not disturb the jury's credibility finding and therefore affirms.

### III. MOTION TO SET ASIDE THE VERDICT

Appellant claims the trial court erred by finding it lacked jurisdiction to set aside the verdict more than twenty-one days after the conviction orders were entered but before the defendant had been sentenced. The Commonwealth concedes this was error, but argues that this Court should affirm the convictions because the trial court's alternative findings would warrant an affirmance on the merits.

- 8 -

Although the Commonwealth concedes the trial court had jurisdiction to consider the motion to set aside the verdict, jurisdiction is a question of law. Reaves v. Tucker, 67 Va. App. 719, 727 (2017) ("A challenge to a trial court's jurisdiction is a question of law that is reviewed *de novo* on appeal."). This Court will not accept a concession of law, but conducts its own analysis on the issue. Logan v. Commonwealth, 47 Va. App. 168, 172 (2005) (*en banc*). The sentencing order is the final order in a criminal case for the purposes of Rule 1:1. Greer v. Commonwealth, 67 Va. App. 324, 332 (2017). Thus, until the sentencing order was entered, the trial court retained jurisdiction to consider appellant's motion to set aside the verdict.

Although the trial court expressed doubts about its jurisdiction during the October 1, 2018 hearing, the court's final sentencing orders, entered October 4, 2018, all contain the following language:

> On September 11, 2018 the attorney for the defendant filed a motion to set aside the jury verdict due to the victim's recantation of her trial testimony. The Court, having heard argument of both counsel, finds that the victim's recantation of her trial testimony was made under duress and/or coercion. The Court denies the motion and exception is noted.

"It is the well-established law of the Commonwealth that a circuit court speaks only through its written orders." Berean Law Group, P.C. v. Cox, 259 Va. 622, 626 (2000). Even if a court states something orally that does not align with its written order, "the circuit court's oral ruling cannot nullify its written final order." Id. at 627.

Contrary to appellant's assertion, the circuit court exercised its jurisdiction when it denied appellant's motion to set aside the verdict. Furthermore, the trial court properly denied appellant's motion to set aside the verdict because appellant failed to prove that F.J.'s recantation was true.

"[M]otions for new trials based on after-discovered evidence are addressed to the sound discretion of the trial judge, are not looked upon with favor, are considered with special care and

caution, and are awarded with great reluctance." Garnett v. Commonwealth, 275 Va. 397, 416-17 (2008) (quoting Commonwealth v. Tweed, 264 Va. 524, 528-29 (2002)). To prevail on a motion for a new trial based on after-discovered evidence a defendant must establish four things by clear and convincing evidence: 1) the evidence was unknown at the time of trial, i.e. discovered since the trial, 2) reasonably diligent efforts would not have resulted in discovery of the evidence in time to be used at the initial trial, 3) the evidence is not "cumulative, corroborative or collateral," and 4) the evidence "is material" and would have produced a different result at trial. Id. at 417.

"[R]ecantation evidence is generally questionable in character and is widely viewed by courts with suspicion because of the obvious opportunities and temptations for fraud." Carpitcher v. Commonwealth, 273 Va. 335, 346 (2007). "Unless proven true," a recantation is not material, but instead, "merely . . . an attack on a witness' credibility by the witness herself." Id. Moreover, when a defendant seeks to rely on the recantation of testimony, the defendant must establish by "clear and convincing proof that the witness testified falsely at the trial, and not merely . . . that by reason of conflicting statements his testimony is unworthy of belief." Lewis v. Commonwealth, 193 Va. 612, 625 (1952).

Appellant was required to demonstrate that F.J.'s recantation was true and that her trial testimony was false. He failed to do so. The fact that the trial court could not find the recantation was true is fatal to appellant's argument. See Carpitcher, 273 Va. at 346 (holding that when the "circuit court was unable to determine whether [the] recantation was true" this Court did not err in denying the writ of actual innocence). Here, the trial court's conclusion is amply supported by the record. The record demonstrates F.J. was repeatedly contacted by appellant's family, supporting the trial court's conclusion she was coerced. Moreover, at the hearing on the motion, F.J. testified that her trial testimony was true and that she only recanted to

get appellant's family to leave her alone. Therefore, this Court affirms that the evidence was sufficient to support the trial court's denial of the motion to set aside the verdict.

## IV. CONCLUSION

First, although F.J.'s testimony at trial had some inconsistencies with her earlier statements, her testimony and statements to police were consistent in the material details. Her testimony was not so inconsistent or farfetched as to be unworthy of belief. Therefore, the evidence was sufficient to support appellant's convictions.

Second, the trial court properly denied appellant's motion to set aside the verdict in its October 4, 2018 written final orders, implicitly asserting that it had jurisdiction and making findings of fact and credibility that (1) the court believed F.J.'s trial testimony and did not believe her recantation, which she later disavowed, and (2) F.J.'s recantation was a product of pressure by appellant's family.

For all of these reasons, this Court affirms appellant's convictions.

<u>Affirmed.</u>